IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: KIOR, INC., | : | Chapter 11 |
| Debtor. | : | Bankr. Case No. 14-12514 (CSS) |
| | : | |
| LEIDOS ENGINEERING, LLC, | : | |
| Appellant, | : | Civ. No. 15-1009 (GMS) |
| v. | : | |
| KIOR, INC. and ANDREW R. VARA, Acting United States Trustee, | : | |
| Appellees. | : | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Presently before the court is the appeal (D.I. 1) of Leidos Engineering, LLC ("Leidos") from a Bankruptcy Court order (B.D.I. 793)[1] ("Order") denying its application for allowance and payment of attorneys' fees and costs as an administrative expense under 11 U.S.C. §§ 503(b)(3)(D) and (b)(4) (B.D.I. 755) ("Application") on the basis that Leidos did not carry its burden of proof in establishing a substantial contribution to the Chapter 11 case. For the reasons that follow, the court will affirm the Order.

## II.   BACKGROUND

### A. The Chapter 11 Case

The court writes solely for the parties and will, therefore, only briefly recite the facts essential to the disposition. On November 9, 2014, KiOR, Inc. ("Debtor") filed a voluntary petition

---

[1]The docket of the Chapter 11 case, captioned *In re KiOR, Inc.*, Case. No. 14-12514 (CSS) (Bankr. D. Del.), is cited herein as "B.D.I. __."

seeking relief under Chapter 11 of the Bankruptcy Code. Leidos was listed among the Debtor's twenty largest unsecured creditors with a scheduled claim of $121,893 on account of trade debt. (*See* B.D.I. 1 at 11.) Despite the efforts of the Office of the United States Trustee ("UST") to form a statutory committee of unsecured creditors in the Chapter 11 case, only two creditors (including Leidos) applied to serve on the committee. The UST determined that there were insufficient creditors to form an official creditors' committee, and none was appointed. (*See* B.D.I. 137.) The Debtor's proposed timeline contemplated an auction and sale process and emergence from the Chapter 11 case in less than four months. (*See* B.D.I. 2 at 14.) Consistent with this timeline, the Debtor filed its proposed plan of reorganization on December 15, 2014, which was amended and supplemented several times. (*See* B.D.I. 149, 219, 470, 564.)

During the Chapter 11 case, Leidos filed two objections. Three parties, including Leidos, filed objections to the Debtor's disclosure statement. (B.D.I. 244, 246, 316.) Leidos objected on the basis that the disclosure statement did not include adequate information to identify which creditors would qualify for more favorable treatment under the plan.[2] (*See* B.D.I. 244.) Although the Debtor's intent to disclose that information through the filing of a plan supplement was set forth in the Disclosure Statement (*see* B.D.I. 150 at 24), Leidos objected to the timing of the disclosure. Later in the case, six parties, including Leidos, filed objections to confirmation of the plan. (B.D.I. 576, 580, 582, 583, 587, 593.) Leidos objected on the basis of (i) the plan's classification of the trade creditor class, (ii) the amount of funding for the liquidating trust, and (iii) the selection of the liquidating trustee. (*See* B.D.I. 576.) While the Bankruptcy Court overruled Leidos' objections regarding improper classification and selection of the liquidating

---

[2] Leidos argued that, depending on how each trade creditor was categorized, it would either receive a 50% cash payment of its claim plus a *pro rata* distribution from the liquidating trust, or it would receive only the *pro rata* distribution. (*See* B.D.I. 244 at 3-4.)

trustee, the plan was modified to increase the amount of funding for the liquidating trust from $100,000 to $400,000. The Debtor contends that funding was increased in response to a direct request made by the proposed liquidating trustee – not as a result of Leidos' plan objection. (*See* B.D.I. 774 at 5.) On June 9, 2015, the Bankruptcy Court confirmed the plan of reorganization, and the effective date of the plan occurred on June 30, 2015. (B.D.I. 640.)

## B. The Application

On August 14, 2015, Leidos filed its Application seeking allowance and payment of an administrative expense claim in the amount of $49,458.60 for professional fees and costs incurred in the Chapter 11 case pursuant to 503(b)(3)(D) and (b)(4). (*See* B.D.I. 755.) Section 503(b)(3) of the Bankruptcy Code provides that certain administrative expenses shall be allowed after notice and a hearing. 11 U.S.C. § 503(b). Administrative expenses may include expenses incurred by "a creditor . . . in making a substantial contribution in a case under chapter . . . 11 of this title." 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) provides for a related award of attorney's fees. 11 U.S.C. § 503(b)(4). The phrase "substantial contribution" is not defined in the Bankruptcy Code, but the appropriate inquiry under Third Circuit law is "whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *See Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 944 (3d Cir. 1994).

Leidos submitted no evidence in support of the Application other than its attorneys' time records. (B.D.I. 755.) Leidos argued in the Application that, in the absence of a statutory creditors' committee, it had served as the "*de facto* creditors' committee," as the "most active trade creditor" in the case, and provided "meaningful participation" by monitoring the case and filing its two objections, which "benefitted all trade and unsecured creditors." (*See* B.D.I. 755 at 1, 6.) Leidos

3

argued that its objections had resulted in the disclosure of critical information and increased funding for the liquidating trust. (*See id.* at 7.)

Both the Debtor and the UST ("Appellees") objected to the Application on the basis of Leidos' limited involvement in the Chapter 11 case and a lack of evidence that Leidos made a substantial contribution. (*See* B.D.I. 774, 775.) According to Appellees, Leidos was merely an interested creditor, did not take on any significant role in the case, filed only two limited objections, and did not meet its burden of establishing by a preponderance of the evidence that its limited actions had resulted in an actual and demonstrable benefit to the Debtor's estate and creditors. (*See* B.D.I. 774 at 1-2 (quoting *Lebron*, 27 F.3d at 944); B.D.I. 775 at 7-8.) While Leidos' filing of the two objections may have provided an incidental benefit to creditors, Appellees argued that Leidos did not present evidence to overcome the presumption that it was acting primarily in its own self-interest. (*See id.* at 2-3.) Because Leidos' assertions that it had facilitated the outcome of the Chapter 11 case are were unsupported by any evidence, Appellees argued that the Application must be denied. (*See* B.D.I. 774 at 1-2.)

In reply, Leidos attached a two-paragraph declaration from its general counsel stating that Leidos "would not have taken actions it took in this case for which it seeks compensation (i) if an official committee of unsecured creditors had been appointed in this case and (ii) absent an expectation of reimbursement from the estate pursuant to [section 503(b)(3)(D)]." (*See* B.D.I. 790-1 at 1, ¶ 2.) Leidos also attached the transcript of an unreported Delaware Bankruptcy Court bench ruling, *In re Hospitality Liquidating I, LLC*, No. 13-12740 (BLS) (Bankr. D. Del. Feb. 24, 2014) (the "Bench Ruling"), in which a different judge granted a substantial contribution award in a case lacking a creditors' committee on the basis that the applicant's efforts in that case had been

4

"functionally indistinguishable" from what would be expected of an official creditors' committee. (*See* B.D.I. 790-2.)

## C.    Denial of the Application

On October 16, 2015, the Bankruptcy Court held a hearing and oral argument on the Application and denied it. (*See* B.D.I. 796, 10/16/2015 Hr'g. Tr. at 16:15-20.) Leidos presented no witnesses testimony in support of the Application, and the Bankruptcy Court accorded zero weight to the declaration, determining that it was conclusory and failed to provide the facts underlying the conclusions it contained. (*See id.* at 16:17-20.) The Bankruptcy Court determined that the facts of the case did not bear out the position that Leidos had somehow acted as a committee or pseudo-committee in the case, and that Leidos' "honest recitation" of the actions it had undertaken did not support its position either. (*See id.* at 16:21-24; 17:6-11.) Rather, the Bankruptcy Court found that Leidos "focused on very narrow issues designed to protect [its] interests, which is fine, but that's not something the estate has to pay for." (*See id.* at 17:9-11.) The Bankruptcy Court found that Leidos had filed "two limited objections" that "were of little use to development of the case." (*See id.* at 17:12-13.) The Bankruptcy Court noted that Leidos' plan objections had been overruled except for its objection to the funding of the liquidating trust, and that the liquidating trustee's request for additional funds was the catalyst for the increased funding. (*See id.* at 17:12-19.) The Bankruptcy Court concluded that:

> Leidos simply did what any creditor might wish to do in a case. They monitored it for their own purposes and protected their own interests. They did not go beyond that, and they did not provide any additional tangible benefit to the estate or the development of the case with the actions they did take. So in my mind, this isn't even a close call.

(*Id.* at 17:23-18:3.) Based on the lack of evidence presented by Leidos, and having taken judicial notice of the Chapter 11 proceedings, the Bankruptcy Court determined that Leidos' efforts did not rise to the standard that would support a finding of substantial contribution. (*See id.* at 16:15-

17 (noting lack of evidence in support of the Application was "fundamental flaw"); 18:6-12 (denying relief.))  On October 16, 2015, the Bankruptcy Court entered the Order denying the Application "for the reasons set forth on the record at the [h]earing." (B.D.I. 793.)  On October 30, 2015, Leidos filed a timely notice of appeal of the Order. (D.I. 1.)  The appeal has been fully briefed by the parties. (D.I. 12, 13, 14, 16.)

## III.   PARTIES' CONTENTIONS

On appeal, Leidos argues that the Bankruptcy Court erred in denying the Application because: (1) Leidos' activities resulted in a substantial contribution to the Chapter 11 case; (2) the case lacked a creditors' committee, and Leidos' actions were "the functional equivalent of actions that would be expected of an official [creditors' committee];" (3) Leidos' actions "provided tangible benefits to the case and creditors;" (4) Leidos' actions were reasonably tailored to the circumstances of the case; and (5) the Debtor's professional fees totaled approximately $10 million, 0.5% percent of Leidos' total request, while no other creditors' professional fees were paid by the estate. (D.I. 12 at 2-3.)  Leidos further contends that the Bankruptcy Court's denial of the Application in a case where no creditors' committee was appointed is a "case of first impression," and the appeal will resolve "conflicting results" from the Bankruptcy Court allegedly evidenced by the Bench Ruling cited extensively in Leidos' pleadings. (*See id.* at 7.)

Appellees argue that denial of the Application was proper, as Leidos' participation in the case was limited and inconsequential; Leidos failed to present any evidence of substantial contribution; Leidos failed to establish a causal connection between any of its actions and a benefit to the estate or creditors; and Leidos failed offer any evidence overcoming the presumption that it was acting primarily in its own self-interest. (D.I. 13 at 4; D.I. 14 at 2.)  Appellees further argue that the fact that no creditors' committee was appointed in the case has no relevance, as the

6

applicant bears the same burden of proof, and section 503(b)(3)(D) contains no language suggesting any difference in its application based on whether a committee has been appointed. (*See* D.I. 13 at 4-5, 16-18; D.I. 14 at 3, 15-16.) According to Appellees, the Bankruptcy Court did not err by not following the Bench Ruling issued by another judge, which decision was unreported, not precedential, and factually distinguishable from this case. (*See* D.I. 13 at 18; D.I. 14 at 18-19.) Appellees further argue that the amount of compensation received by the Debtor's professionals had no bearing on whether Leidos carried its evidentiary burden to justify a substantial contribution award. (D.I. 13 at 19-20; D.I. 14 at 14 n.4.)

## IV.   JURISDICTION AND STANDARD OF REVIEW

The court has appellate jurisdiction over all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). This court reviews a Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). In the context of this appeal, the Third Circuit has held that "[w]hether a creditor has made a substantial contribution within the meaning of section 503(b)(3)(D) is a question of fact, 'and it is the bankruptcy court that is in the best position to perform the necessary fact finding task.'" *In re Tropicana Entm't LLC*, 498 F. App'x 150, 152 (3d Cir. 2012) (quoting *Lebron*, 27 F.3d at 946). A court's factual finding is clearly erroneous only if it "either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (internal quotation marks omitted). When there are two permissible views of the evidence, the [Bankruptcy Court's] choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

## V.   DISCUSSION

Central to each of Leidos' arguments on appeal is the fact that an official committee of unsecured creditors was not appointed in the Chapter 11 case, and that the Bankruptcy Court failed to give proper consideration to this fact. However, as Appellees point out that the fact that a committee was not appointed in this Chapter 11 case, while unfortunate, is hardly a rare occurrence. (*See* D.I. 13 at 16-17 (citing statistical analyses concluding that in most Chapter 11 cases no official committee is appointed due to insufficient creditor interest.))   Regardless of whether a creditors' committee is appointed in a Chapter 11 case, a party seeking a substantial contribution award is required to meet its burden of proof with respect to its administrative expense claim. The statute requires a "substantial contribution" to the estate, and under Third Circuit law, the applicant must show an actual and demonstrable benefit to the debtor's estate and the creditors. *See Lebron*, 27 F.3d at 944. Here, the Bankruptcy Court determined Leidos failed to meet its burden of proof, and Leidos has cited no authority that the absence of statutory creditors' committee triggers a lesser burden of proof for administrative expense claimants. Leidos' arguments fail for the reasons set forth below.

### A.  Leidos Failed to Meet Its Burden of Proof

### 1.  Applicable Test

Administrative expenses may include expenses incurred by "a creditor . . . in making a substantial contribution in a case under chapter . . . 11 of this title." 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) provides for a related award of attorney's fees. 11 U.S.C. § 503(b)(4). Section 503(b)(3)(D) has two purposes: (1) encouraging meaningful creditor participation in the reorganization process, and (2) minimizing fees and administrative expenses so as to preserve as much of the estate as possible for creditors. *See Lebron*, 27 F.3d at 944. As with all of the

Bankruptcy Code's priority statutes, section 503(b)(3) is to be narrowly construed so that administrative expenses will be held to a minimum. *See In re Worldwide Direct*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) (citing *In re Granite Partners*, *L.P.*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997)).

Leidos is entitled to administrative status for related fees and expenses only if those activities made a "substantial contribution" to the Chapter 11 case. *See* 11 U.S.C. § 503(b)(3)(D). The phrase "substantial contribution" is not defined in the Bankruptcy Code, but the parties agree that the Third Circuit's decision in *Lebron* is binding and sets forth the correct inquiry. (*See* B.D.I. 796, 10/16/15 Hr'g. Tr. at 9:24-25.) The appropriate inquiry under Third Circuit law is "whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron*, 27 F.3d at 944; *see also, In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1253 (Bankr. S.D.N.Y. 1981) ("Services which substantially contribute to a case are those which foster and enhance . . . the progress of reorganization.") (internal quotations omitted).

"The substantial contribution test is applied in hindsight, and scrutinizes the actual benefit to the case. "Accordingly, the applicant must show a 'causal connection' between the service and the contribution." *Granite Partners*, 213 B.R. at 447. Finally, as the party seeking reimbursement, it was Leidos had the burden to prove that it was entitled to a substantial contribution award by a preponderance of the evidence. *In re Columbia Gas Sys., Inc.*, 224 B.R. 540, 548 (Bankr. D. Del. 1998); *Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) (holding burden of proof is on administrative expense claimant); *Summit Metals*, 379 B.R. at 50 (burden of persuasion is preponderance of the evidence).

As the Bankruptcy Court recently observed, while the phrase "substantial contribution" does not lend itself to a set of exacting criteria, "a well-developed body of case law teaches that the sort of contribution that reaches the substantial threshold is exceedingly narrow." *In re RS Legacy Corp.*, 2016 WL 1084400 at *4 (Bankr. D. Del. Mar. 17, 2016). For example, courts have held that:

> extensive and active participation alone does not qualify, *In re Bayou Grp.*, 431 B.R. [549, 557 (Bankr. S.D.N.Y. 2010)]; services that are duplicative of other estate professionals are insufficient[, ]*Worldwide Direct,* 334 B.R. at 134; activities that primarily further the movant's self-interest do not suffice, *Lebron,* 27 F.3d at 944; and expected or routine activities in a chapter 11 case—such as encouraging negotiation among parties, commenting and participating in successful plan negotiations, and reviewing documents—generally do not constitute a substantial contribution, *In re American Plumbing & Mech., Inc.,* 327 B.R. 279, 291 (Bankr. W.D. Tex. 2005); *In re Columbia Gas,* 224 B.R. at 548. A substantial contribution is one that confers a benefit to the entire estate and fosters the reorganization process. *Lebron,* 27 F.3d at 944.

*RS Legacy*, 2016 WL 1084400 at *4. *See also In re Summit Metals*, 379 B.R. 40, 52 (Bankr. D. Del. 2007) (denying application where there was no evidence applicant's efforts increased the assets of the case or prevented them from diminishing). Thus, a substantial contribution award "is reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." *See RS Legacy*, 2016 WL 1084400 at *3 (quoting *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008)); *see also Columbia Gas*, 224 B.R. at 548 (actions must be "unusual" or extraordinary" to justify substantial contribution award). To meet this heavy burden, "[c]orroborating testimony by a *disinterested* party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a 'substantial contribution.'" *See In re Buckhead Am. Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993); *WorldWide Direct*, 334 B.R. at 123.

## 2.  Evidence of Substantial Contribution and Causal Connection

According to Leidos' pleadings and the time records submitted in support of its

Application, the only actions undertaken were the monitoring of the Chapter 11 case and the

filing of its two objections. (*See* B.D.I. 755.)  Despite the evidentiary burden Leidos was

required to meet, no other evidence was submitted in support of the Application. (*See id.*)

Leidos offered no corroborating testimony from a disinterested party and did not claim to have

undertaken "unusual" or "extraordinary" actions that typically provide the basis for an approved

substantial contribution application.[3]  Rather, Leidos' attempt to establish substantial

contribution is based primarily on its claim that it functioned as a *de facto* creditors' committee,

"acting on behalf of general unsecured creditors," taking "appropriately tailored action to protect

creditor rights in the case" and "obtaining critical procedural and substantive improvements in

the Debtor's case." (*See* D.I. 12 at 12.)  According to Leidos, its activities in monitoring the case

and filing objections "constituted a necessary and valuable counterbalance to the Debtor," which

benefitted all general unsecured creditors. (*See id.*)  Specifically, Leidos argues that its

objections to the disclosure statement and plan led to additional disclosures and improvements in

both documents, and that this is evidence of its substantial contribution. (*See id.* at 4, 15-16.)

Conversely, Appellees argue that Leidos' participation in the case was limited and

inconsequential, that Leidos failed to offer any evidence to support a substantial contribution

award, and that the Order may be affirmed on this basis alone. (*See* D.I. 13 at 4-5; D.I. 14 at 2.)

---

[3] *See e.g., In re Essential Therapeutics, Inc.,* 308 B.R. 170, 176 (Bankr. D. Del. 2004) (finding substantial contribution where applicant drafted key plan provisions and prepared necessary corporate documents for the reorganized debtor, lessening the burden on the debtor's professionals); *In re AM Int'l, Inc.,* 203 B.R. 898 (D. Del. 1996) (applicants substantially contributed because their negotiations allowed creditors to be paid in full on their claims); *In re Jelinek,* 153 B.R. 279 (Bankr. N.D. 1993) (finding significant benefit where creditor's attorney proposed Chapter 11 plan and acted as counsel for plan's liquidating agent; without an attorney, liquidating plan never would have been proposed nor creditors paid); *In re 9085 E. Mineral Office Bldg., Ltd.,* 119 B.R. 246 (substantial contribution made by creditor whose confirmed plan and willingness to compromise its own claim allowed full payment to all creditors whereas Debtor's plan provided for only token distribution to creditors).

Appellees further argue that monitoring the case is insufficient to justify this relief, and a substantial contribution award cannot be given out to every successful disclosure statement and plan objector. (*See* D.I. 13 at 12.)

The court agrees with Appellees. Even extensive participation in a Chapter 11 case, without more, is not a sufficient basis for 503(b) status. *See Buckhead,* 161 B.R. at 15. Rather, Leidos was required show an actual and demonstrable benefit to the debtor's estate and the creditors. *See Lebron,* 27 F.3d at 944. In absence of any other evidence, Leidos' best argument is that its plan objection led to an increase in initial funding for the liquidating trust. (*See* D.I. 12 at 16-17.) However, even if this could suffice to support some portion of Leidos' request, Leidos was required to "show a causal connection between the service and the contribution." *Granite Partners,* 213 B.R. at 447 (citation omitted). Here, Leidos has offered no corroborating evidence that its plan objection led to the funding increase, only conclusory statements to that effect, and it is insufficient to "reason[] from sequence to consequence, assuming a causal connection simply because one event follows another[, as that] is speculation not proof." *See id.* at 452. Moreover, Appellees attributed the funding increase to a request from the proposed liquidating trustee, and the Bankruptcy Court agreed with Appellees. (*See* B.D.I. 796, 10/16/15 Hr'g. Tr. at 17:14-22.) Given the dearth of evidence presented on the issue, the court cannot conclude that the Bankruptcy Court clearly erred in finding Leidos failed to carry its burden of proof in establishing that it made a substantial contribution or provided any tangible benefits to the case and creditors.

### 3.  **Evidence Rebutting Presumption of Self-Interest**

The court finds no error in the Bankruptcy Court's conclusion that Leidos failed to rebut the presumption that its actions were undertaken in its own self-interest. The Third Circuit has

12

explained that "substantial contribution should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate." *Lebron,* 27 F.3d at 944 (internal quotation marks omitted). "A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate." *Id.* at 946. "In absence of such a finding, there can be no award of expenses even though there may have been an incidental benefit to the chapter 11 estate." *Id.*

Appellees argue that the Leidos' monitoring the case and filing of the objections are efforts that clearly would have undertaken absent an expectation of reimbursement from the estate, and that Leidos offered no evidence that its actions were designed to benefit other creditors. (*See* D.I. 13 at 15.) Appellees argue that time records demonstrate that Leidos' attorneys "simply monitored the case in the ordinary course of representing its interests, and acted in a few discrete matters of special interest to Leidos" – the kinds of actions typically taken by creditors to protect their own interests, even when an official unsecured creditors' committee has been appointed. (*See id.*) Conversely, Leidos argues that the existence of self-interest does not, in and of itself, preclude reimbursement. (*See* D.I. 12 at 14.)

Leidos is correct that the existence of self-interest does not bar recovery. As the Third Circuit has noted, most activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree. *See Lebron,* 27 F.3d at 944. Nevertheless, the purpose of section 503(b)(3)(D) is to encourage activities by creditors that will benefit the estate *as a whole. See Columbia Gas*, 224 B.R. at 548. "Creditors are presumed to be acting in their own

interests until they satisfy the court that their efforts have transcended self-protection." *See*

*Columbia Gas,* 224 B.R. at 548 (quoting *Lebron,* 27 F.3d at 944). Because Leidos is presumed

to be acting in its own self-interest, it was required to introduce "something more than self-

serving statement regarding its involvement in the case" in order to carry its burden of

demonstrating that its services provided a substantial contribution to the estate. *Buckhead*, 161

B.R. at 15 (internal citations omitted).

Leidos offered no evidence that its actions were undertaken on behalf of general

unsecured creditors or that it intended its actions to benefit others. Leidos merely argues that

since no official committee was appointed, it served as *de facto* creditors' committee and acted

on behalf of general unsecured creditors as the Debtor's "most active trade creditor." (D.I. 12 at

15.) This conclusory statement is insufficient to rebut the presumption. Nor do the time records

submitted support Leidos' argument. As Appellees point out, the time records reflect no

consultation with other trade creditors and no attempts to negotiate with the Debtor regarding

treatment of general unsecured claims. (*See* D.I. 13 at 15.) Beyond this, Leidos offered only the

declaration by its general counsel that it would not have undertaken these actions if an official

committee had been appointed and without an expectation of reimbursement from the estate.

(*See* B.D.I. 790-1.) As the Bankruptcy Court noted, the declaration offers a mere conclusion and

no facts supporting the conclusion. (*See* B.D.I. 796, 10/16/15 Hr'g. Tr. at 16:17-20.)

Based on the evidence available, it appears Leidos' limited activities in this Chapter 11

case were undertaken only in connection with those issues that were beneficial to Leidos' own

interests, and thus would have been undertaken absent an expectation of reimbursement from the

estate. Given the dearth of evidence presented on the issue, the court cannot conclude that the

Bankruptcy Court clearly erred in determining that Leidos failed to overcome the presumption

14

that it acted primarily in its own self-interest. *See Lebron*, 27 F.3d at 944 (an applicant's failure to rebut the presumption "exclude[s] reimbursement in connection with its activities.").

## B.    Lack of a Statutory Committee

Leidos argues the Bankruptcy Court erred in denying the Application because the case lacked a creditors' committee, and Leidos' actions were "the functional equivalent of actions that would be expected of an official [creditors' committee]." (*See* D.I. 12 at 2-3.) Leidos argues that an official creditors' committee is appointed in most cases, and the Bankruptcy Court erred by "failing to adequately account for the structural deficiency created by the lack of a creditors' committee." (*See id.* at 12.) Leidos contends that this appeal presents "a case of first impression" because "there are few cases discussing" application of section 503(b)(3) where an official committee of unsecured creditors was not appointed, and this appeal will resolve "conflicting results" on the issue among the bankruptcy judges in this district. (*See id.* at 7 (referring to the Bench Ruling).) While conceding that the Bankruptcy Court was not bound by the Bench Ruling (*see id.* at 10), Leidos appears to argue that the Bankruptcy Court erred as a matter of law "in its application of the section 503(b)(3) policies and standards" examined in the Bench Ruling. (*See id.* at 12.)

Conversely, Appellees argue that the absence of a creditors' committee has no relevance to a determination of whether Leidos carried its burden of proof under *Lebron*. (*See* D.I. 13 at 16-18; D.I. 14 at 16.) As the Bench Ruling cited repeatedly by Leidos is not binding, and is factually distinguishable from this case, Appellees argue that the Bankruptcy Court could not have erred as a matter of law in failing to reach the same conclusion. Appellees point out that the fact that a committee was not appointed in this case is hardly a rare occurrence. (*See* D.I. 13 at 16-17 (citing analyses that have concluded that in most cases no official committee is

15

appointed due to insufficient creditor interest.))  As such, Appellees argue this is not a case of

first impression, but rather another in a long line of cases in which a section 503(b)(3)(D)

applicant failed to meet its burden of proof under *Lebron*.  (*See* D.I. 13 at 16.)

Leidos' argument on this point fails for a number of reasons.  Leidos' assertion that the

Bankruptcy Court failed to consider the lack of a creditors' committee in the case is both

irrelevant and incorrect.  The assertion is irrelevant because section 503(b)(3)(D) contains no

language suggesting any difference in its application based on whether a committee has been

appointed. 11 U.S.C. § 503(b)(3)(D).  The fact that no committee was appointed in this case

does not change the relevant inquiry of whether a substantial contribution was made under

*Lebron*.  The assertion is also incorrect because the Bankruptcy Court clearly considered the

absence of a statutory committee in evaluating whether there was any evidence of Leidos'

substantial contribution.  The Bankruptcy Court observed that "the Court lacks the normal

adversary situation when there's not official committee of unsecured creditors in a case," and

noted that "in certain circumstances[, ] a creditor can step up . . . to fill that role . . . and assist the

Court in making decisions by preserving an adversary process." (*See* B.D.I. 796, 10/16/15 Hr'g.

Tr. at 16:8-14.)  Notwithstanding the importance a creditors' committee in a Chapter 11 case, the

Bankruptcy Court found no evidence that Leidos had stepped in to fill that role in this case.  To

the contrary, the Bankruptcy Court found that another creditor, MDA,[4] had been "the primary

creditor involved in the case, actively involved from day one" and observed that "if [Leidos was]

---

[4] At the plan confirmation hearing, Leidos' counsel stated that MDA had "taken the laboring oar on many of the duties that should otherwise have been performed by a committee," and that Leidos had "support[ed] these efforts." (*See* B.D.I. 644, 6/8/15 Hr'g. Tr. at 175:11-13.)  Like Leidos, MDA also sought a substantial contribution award of more than $2.7 million, arguing, like Leidos, that it had filled the role that would have otherwise been filled by a statutory creditors' committee, and claiming, like Leidos, that its plan objection had resulted in increased funding for the liquidating trust. (*See* B.D.I. 754 at 3-4.)  The Bankruptcy Court denied MDA's substantial contribution application as well, finding that it "borderline[d] on frivolous." (*See* B.D.I. 787, 9/15/15 Hr'g. Tr. at 117:5-6; B.D.I. 785.)  That order was not appealed.

trying to act as a committee, [it wasn't] acting as a very effective one, in that [it was] focused on very narrow issues designed to protect [its] client's interests." (*Id.* at 16:24-17:1; 17:7-10.)

Additionally, the Bench Ruling cited extensively in Leidos' pleadings had no binding effect, and the Bankruptcy Court followed well-established practice in declining to base its decision on a transcript ruling that necessarily lacks "the amount of time and careful study" of written opinions. (*See id.* at 15:17-16:7.) Even if Bench Ruling were binding, it is factually distinguishable from this case, and Leidos has misconstrued its holding. The *Hospitality* court did not base its decision, as Leidos contends, on a legal conclusion that section 503(b)(3)(D) awards are warranted as a matter of law when no creditors' committee has been appointed; instead, it correctly applied *Lebron*'s substantial contribution test and based its decision on the factual record in that case. (*See* Bench Ruling at 32:2-7 ("the record reflects" that the applicant's actions were "functionally indistinguishable" from those which the court would have expected an official committee to have taken); *id.* at 33:17-19 ("based on the record before [the court,]" the applicant met its burden under *Lebron*.)) That the Bankruptcy Court determined Leidos had not carried its burden to support such an award in the instant case does not make it a "conflicting" decision or a "case of first impression," as Leidos contends.

## C.    Professional Fees

Leidos contends that the amount of its section 503(b)(3)(D) claim is *de minimis* in relation to the fees paid to the Debtor's professionals during the Chapter 11 case, that Leidos "preemptively applied a generous discount" to account for services unique to Leidos' claim, and that its claim is "eminently proportionate, reasonable and feasible in this case." (D.I. 12 at 18.) Leidos further argues that no creditors' professional fees were paid by the estate, and because the estate did not bear the expenses typically incurred by a creditors' committee's professionals, it is

17

therefore "appropriate under the Bankruptcy Code structure for the estate to reimburse Leidos." (*Id.*) Conversely, Appellees argue that whereas estate professionals may be awarded "reasonable compensation" under section 330(a) of the Bankruptcy Code to the extent they meet the standards of that provision, substantial contribution awards are subjected to the much stricter standard set forth in *Lebron.* (*See* D.I. 13 at 19 (citing *Lebron,* 27 F.3d at 943-44.)) Appellees urge the court to disregard the "apples to oranges" comparison offered by Leidos as a logical fallacy and as irrelevant to the determination of whether Leidos' actions in the case warrant a substantial contribution award. (*See id.*; D.I. 14 at 14 n.4.)

The court agrees with Appellees. The amount of compensation received by the Debtor's professionals has no bearing on whether Leidos carried its burden of proof under 503(b). Leidos' request was not denied because it was unreasonable in size, but rather because Leidos did not provide sufficient evidence to justify it. (*See* B.D.I. 796, 10/16/15 Hr'g. Tr. at 18:6-12.) The fact that the estate did not bear similar expenses from professionals on the creditor side of the Chapter 11 case is also irrelevant to this determination, and the Bankruptcy Code provides no such mandate.

**D.      Sanctions**

The Debtor argues that the appeal is "wholly without merit" and "lacks any colorable support." (*See* D.I. 14 at 19 (citing *Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991); *Hilmon Co. v. Hyatt Int'l*, 899 F.2d 250, 253 (3d Cir. 1990.)) Accordingly, the Debtor has requested that this court find the appeal frivolous and reserves its rights to seek payment of fees and expenses. Despite the Debtor's compelling argument, the court declines to find the appeal is frivolous.

18

## VI.    CONCLUSION

For the foregoing reasons, the court will AFFIRM the Order.

February 27, 2017

UNITED STATES DISTRICT JUDGE

19